ROBERT ARMSTRONG, JR., Appellant, *v.* THE VILLAGE OF FORT EDWARD, Respondent.

1. MUNICIPAL CORPORATIONS — POWER OF VILLAGE WATER COMMISSIONERS TO EMPLOY ASSISTANCE IN PROCURING SALE OF BONDS. An express power in a village board of water commissioners to sell water bonds carries with it the implied power to employ such reasonable or proper assistance as may be requisite to bring about an advantageous sale; and this power is not limited to the employment of a broker to sell the bonds.

2. ACTION TO RECOVER FROM VILLAGE COMPENSATION FOR EFFECTING SALE OF WATER BONDS — CASE FOR JURY. The evidence for the plaintiff, in an action to recover compensation from a village for services rendered in bringing about a sale of village water bonds, reviewed and found sufficient to entitle the plaintiff to go to the jury upon the questions whether he assisted in bringing about the sale, and, if so, whether his services were performed upon the understanding between the village board of water commissioners and himself that he should be paid for them.

*Armstrong* v. *Vil. of Fort Edward*, 84 Hun, 261, reversed.

(Argued April 27, 1899; decided June 6, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the third judicial department, entered February 23, 1895, affirming a judgment in favor of defendant entered upon a dismissal of the complaint on trial at Circuit.

This action was brought to recover compensation for services rendered to the board of water commissioners of the defendant village, in bringing about a sale of its water bonds. The plaintiff, who was a practicing lawyer, was a citizen and taxpayer of the village; he held no municipal office, but was a member of a committee of citizens appointed to assist in disposing of the bonds.

The substance of the material evidence on the part of the plaintiff is set forth in the opinion.

*James M. Whitman* for appellant. The dismissal of the complaint by the trial judge was an arbitrary and illegal decision, as the plaintiff by the law, and the evidence as it stood, was clearly entitled to recover of the defendant the

value of his services as claimed and proved. (*O. Nat. Bank* v. *Omaha,* 15 Neb. 333; *Brownell* v. *Town of Greenwich,* 114 N. Y. 519; *Hoag* v. *Town of Greenwich,* 133 N. Y. 152; *Fleming* v. *Vil. of Suspension Bridge,* 92 N. Y. 368; *Lyon* v. *Mitchell,* 36 N. Y. 235; *Southard* v. *Boyd,* 51 N. Y. 177.) The question whether or not, under the evidence, there was an implied agreement to pay for the services was one of fact to be submitted to the jury. (*Pendleton* v. *E. S. D. Co.,* 19 N. Y. 13; *Smith* v. *L. I. R. R. Co.,* 102 N. Y. 190; *Justice* v. *Lang,* 52 N. Y. 323; *Muller* v. *Mayor, etc.,* 63 N. Y. 353; *Trustees of East Hampton* v. *Kirk,* 68 N. Y. 459; *Clemence* v. *City of Auburn,* 66 N. Y. 334; *Train* v. *H. P. Ins. Co.,* 62 N. Y. 598; *Forbes* v. *Chichester,* 125 N. Y. 769; *Gould* v. *Bd. of Education,* 34 Hun, 16; *Mayor, etc.,* v. *Sands,* 105 N. Y. 210.)

*R. O. Bascom* and *Joseph Potter* for respondent. There was no power in the water commissioners to employ the services of the plaintiff and appellant to sell or assist in selling the bonds, to raise the money to defray the expenses of construction. (L. 1875, ch. 181; L. 1885, ch. 170; 2 R. S. [8th ed.] 993; *Vil. of Fort Edward* v. *Fish,* 156 N. Y. 363.) If the water commissioners had any power to devote the moneys raised to construct water works, or a plant, the mode of the exercise of such power was irregular and illegal. (L. 1874, ch. 321, § 27.) If the subject be regarded as simply a transaction between individuals, no implication of a promise to pay for plaintiff's services can arise. (*King* v. *Leighton,* 100 N. Y. 386; *People ex rel.* v. *Speir,* 77 N. Y. 144; *Potter* v. *Carpenter,* 76 N. Y. 157; *Williams* v. *Hutchinson,* 5 Barb. 122; *Dye* v. *Kerr,* 15 Barb. 444; *Wilcox* v. *Wilcox,* 48 Barb. 327; *Conyer* v. *Van Aernum,* 43 Barb. 602; *Marion* v. *Farnan,* 68 Hun, 388; *Floss Case,* 105 Penn. St. 258.) The principle that plaintiff cannot recover for any of the services rendered is well settled. (*Bloom* v. *Richards,* 2 Ohio St. 387; *Roby* v. *West,* 4 N. H. 264; *Elkins* v. *Packard,* 21 Vt. 456; *Frost* v. *Ellison,* 40 Conn. 127; *Brown* v. *Brown,* 34

Barb. 533; *Rose* v. *Truax*, 21 Barb. 361; *Nellis* v. *Clark*, 4 Hill, 424; *Smith* v. *City of Albany*, 7 Lans. 14; 61 N. Y. 444; *Vil. of Fort Edward* v. *Fish*, 156 N. Y. 363.)

PARKER, Ch. J.    The plaintiff in this action seeks to recover of the defendant for services rendered to its board of water commissioners in bringing about a sale of bonds of the par value of $97,000, for the sum of $105,000. The questions presented to this court are three in number.

(1) Did the board of water commissioners have the power to employ the plaintiff ?

(2) Did the plaintiff assist in bringing about the sale ?

(3) If he did, were the services performed with the understanding between the board and himself that he should be paid for them ?

The answer to the second and third questions must be found in the testimony, but the authorities dispose of the first question. *Mayor, etc.*, v. *Sands* (105 N. Y. 210) was an action brought to recover moneys paid to an agent for selling the bonds of the city of New York, the agent being at the time one of the municipal officers, namely, a commissioner of taxes. It was held that the courts will take judicial notice of the fact that in a sale of bonds and negotiations for loans in behalf of states, municipalities and governments, aside from their own fiscal agents, other agents are employed, and that the fact that an agent so employed was at the time a city officer did not deprive him of the right to receive and retain the agreed compensation.    But it should be observed that while the agent was a city officer, he was in nowise connected with the department of government charged with the sale and disposition of the bonds. In the course of the opinion Chief Judge RUGER said : " It is a matter of public history, of which courts will take judicial notice, that in the sale of bonds, and negotiations for loans in behalf of states, municipalities and governments, the services of their own fiscal agents are usually, if not invariably, supplemented by the employment of bankers, brokers and other financial agencies to aid in raising

moneys for public purposes. During the late war the Federal government raised large sums by the issue and sale of treasury notes and bonds, which would have been practically difficult, if not impossible, but for the assistance rendered by extraneous financial agencies employed and paid by the secretary of the treasury." In *Brownell* v. *Town of Greenwich* (114 N. Y. 518) the court said, in speaking of the action of the commissioners in turning the bonds over to another person for sale : " It was not necessary that merely executive acts, not involving the exercise of discretion, should be done by the commissioners personally, but such acts might be done by another under their direction." (Citing *Mayor, etc.,* v. *Sands, supra.*) " When a statute commands an act to be done, it authorizes all that is necessary for its performance. Hence the commissioners could lawfully employ Mr. Andrews as a broker to sell the bonds and invest the proceeds according to their instructions."

The contract that was declared void in the case of *Village of Fort Edward* v. *Fish* (156 N. Y. 363) related to a portion of the bonds that this plaintiff claims to have assisted in selling. While the question there presented is a very different one from that involved in this case, nevertheless this court did have occasion to consider the implied powers of the water commissioners. Said the court at page 372 : " The actual power was to borrow money by issuing and selling bonds at not less than par. The express power to issue bonds involved the implied power to pay for engraving, printing and the like. The express power to sell bonds doubtless carried with it the implied power to pay counsel for an opinion as to the validity of the bonds, as was done in this case, and possibly to pay a commission to brokers for selling the bonds. These expenses were incidental to the duty imposed and fairly came within the scope of the main power." This last case calls attention to the rule by which the authority of officers, such as the members of this board of water commissioners, to make contracts may be determined. Where there is an express grant of power to them it carries with it, by necessary implication, every other

power needful and proper to the execution of the power
expressly granted.   The authority to sell water bonds, there-
fore, carries with it the authority to secure such reasonable and
proper assistance as may be requisite to bring about an advan-
tageous sale of the bonds.   It is suggested that the rule per-
mits the employment of brokers only to sell the bonds, but it is
not so confined.   It was not a broker that was selected in *Mayor,
etc.*, v. *Sands* (*supra*), and it quite frequently happens that
men who are not brokers, and never have been, have such rela-
tions that they can dispose of bonds fully as advantageously as
brokers.   Those having charge of the selling of bonds have
the right to exercise their discretion in selecting the agencies
by which they shall make disposition of them, but in the
selection of such agencies it is their duty to exercise their best
judgment in the interests of the public whom they serve.   The
selection, therefore, must be made in good faith and with a
fixed purpose to further the interests of the constituency
represented.

It appears from the evidence in this case that this defendant
secured a price for its bonds which at that time could not be
obtained through brokers.   When this plaintiff's attention was
brought to the subject of the disposition of the bonds, the sit-
uation of the commissioners in relation thereto was something
like this: The contract to build the water works had been let,
and the work had progressed for some time; the obligation
to provide for payment of the installments named in the con-
tract was pressing; the bonds, which were four per cent
bonds, were advertised and offered for sale at public auction
in May, 1893, but owing to the stringency of the money
market no bidders appeared; there was present at the sale a
Mr. Cantwell, a dealer in bonds, but he declined to bid for
them and the board resolved to postpone the sale for sixty days
and they encouraged him to attempt to secure an offer for the
bonds.   A month and a half rolled around and Cantwell had
not succeeded in finding a purchaser for the bonds, nor had
any of the others succeeded in finding a person who would
buy the bonds or any portion of them, and so the board con-

vened and passed a resolution appointing the president and the counsel, with others that they might select, a committee to see the comptroller and others in regard to the bonds.    A dealer in bonds by the name of Fish, from Elmira, became interested in subject about the 17th day of May, 1893, and the outcome was that he made a contract for $50,000 of the bonds flat, conditioned on their being approved by his counsel.    He did not take the bonds, although the water commissioners would have been gratified to have had him take them. The record contains evidence suggesting much of fruitless effort on the part of the local authorities to place the bonds, and while the matter of their disposition was in that situation, parties who were not brokers were at work on the matter, and the outcome was a sale of $97,000 of the bonds for the sum of $105,000.    Such an agent the board of water commissioners had the right to employ at a reasonable compensation, whether his usual business was that of a broker, a lawyer, or doctor.

It being established that the board of water commissioners had power to employ this plaintiff, we come to the two remaining questions, which are whether the plaintiff actually assisted in bringing about the sale of the bonds, and also whether such services were upon the understanding between himself and the water commissioners that he should be compensated. As to these questions this court has no occasion to go further than to inquire whether there was sufficient evidence in support of each proposition to entitle the plaintiff to go to the jury.   It appears that the plaintiff by personal solicitation secured the services of friends who urged their purchase upon the comptroller, who was at liberty to purchase or not as he chose and who subsequently purchased the bonds.   The plaintiff testified that he was away from home eighteen days in the effort to bring about a sale of the bonds, and the fact appears that the board of water commissioners passed a resolution, under which they offered to pay him $25 a day for the eighteen days that he gave to the work.   It is quite apparent from what has already been said that there was sufficient evidence adduced to entitle the plaintiff to go to the jury on the

question whether he had rendered services that assisted in bringing about a sale of the bonds.

This brings us to the third question, which is in effect whether the services performed were upon an understanding between the board and the plaintiff that he should be paid for them, and again the inquiry must simply be whether there was such evidence of an understanding that he was to be compensated as entitled him to have the jury pass upon the question. At the outset we find a report from the president of the board, who had been appointed with Mr. Hull, their counsel, a committee on the sale of the bonds, and also a statement from the minutes of the board under date of June 26th as follows: " At their request Mr. Armstrong has been associated with them in the effort to find a purchaser for the bonds. A number of parties had been seen but no definite arrangement has been made." On July 6th, the report to the board showing that all efforts so far made to sell the bonds had been unavailing, a resolution was passed by the board authorizing the committee to pay a sum not exceeding $1,000 to any person who would secure a purchaser for the bonds at par and accrued interest. The plaintiff testified that when the president started to interest him in the matter of selling the bonds, he, the president, said that Mr. Hull had suggested that they employ him, the plaintiff, to assist in selling the bonds. That subsequently Mr. Hull did come to him, and in the course of the conversation Mr. Hull said: " If you will take hold and help you will be paid for your services. * * * I said to Mr. Hull I did not know what I could do, but I would try; I afterwards attended a meeting of the water board, and had some conversation with members of the board in regard to the matter." Later on the witness testified that after his return from a visit to Albany, where he had been in an effort to sell the bonds, he learned that Mr. Cantwell had been given an option to sell the bonds for sixty days, and thereupon he attended a meeting of the board, and he testifies : " I stated that in the board; I inquired of the board whether that was true, saying to them at the time that if they

41

had placed the bonds in any other broker's hands I did not choose to serve the board any more in the capacity of trying to place the bonds, for at the end of it there would be difficulty about my pay;" to which Mr. Sprague, who was a member of the board of water commissioners and its secretary (after first turning to the minutes and reading the resolution touching Mr. Cantwell, which he said did not give him an option) made reply : " They (meaning the board) were free to employ any other broker or any other person to place them, and they desire that I should go on and place the bonds." He then gives some conversation that took place, various members of the board taking part, the president, Mr. Durkee, and Messrs. Tasker and Riley, and he then addressed them further as follows : " If you feel yourselves bound here, gentlemen, by any resolution you have passed, by any action Mr. Cantwell will take, I do not want to go out and do work on the top of his, because when it comes to settlement for my pay there will be trouble about it ; it is not fair to Mr. Cantwell ; it is not fair to me." The president of the board, Mr. James R. Durkee, being on the stand, the plaintiff directed his attention to the meeting referred to in his testimony (quoted *supra*), and then addressed him the following question : " Q. Do you remember that I made a statement there, that I understood Mr. Cantwell had an option on the bonds for sixty days, and that I declined to proceed further in the matter if that was true, because when it came to the question of my compensation there would be trouble ? A. Something similar to that; that matter was discussed there ; I allude to the time after I met Mr. Cantwell ; Mr. Cantwell gave me a letter to show to the board ; I recollect that Mr. Armstrong objected to proceeding further with the matter if it was true that Mr. Cantwell had an option on the bonds, on the ground that there would be trouble in the end about his compensation, and that was not fair to him or Mr. Cantwell."

As a nonsuit was granted at the close of plaintiff's case, there was no evidence given on the part of the defendant, nor was there any on the part of the plaintiff in conflict with that we

have quoted, and it is apparent that the jury would have been authorized to find from it that such services as were rendered by the plaintiff in the sale of the bonds were rendered upon an understanding between him and the board of water commissioners that he should be paid for them. The views expressed lead to the conclusion that the case ought to have been submitted to the jury and that the nonsuit was error.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed, etc.