CITY OF BAY CITY v. LUMBERMEN'S STATE BANK.

1. MUNICIPAL CORPORATIONS—BONDS—SALES—PRINCIPAL AND AGENT —PRICE.

By paying for an entire issue of municipal bonds of the city of Bay City at a price agreed upon, without any report of further dealings therewith by the bank, which in turn disposed of nearly all the bonds to its customers, the bank became a purchaser, not an agent, of the city, which had or claimed no interest in the proceeds of subsequent sales made to customers of the bank, and especially where the parties themselves treated the transac-

tion as a sale and so described it in the written contract executed between them.

2. SAME—COMMISSION—CONTRACTS—ILLEGALITY.

Under Act No. 720, Local Acts 1907, which authorizes the expenditure of the funds from the foregoing bond issue exclusively for the purposes of a park, the payment of $4,000 to defendant bank as a commission for the sale of the bond issue, out of the proceeds, was unlawful and in excess of the authority granted by statute, amounting in effect to a rebate or discount.

3. SAME—ESTOPPEL.

Plaintiff city was rightly held by the trial court to be entitled to recover back the commission, so called, as the doctrine of estoppel which defendant attempted to interpose would not be held applicable to an unauthorized payment in violation of statute.

Error to Bay; Sharpe, J., presiding. Submitted June 13, 1916. (Docket No. 51.) Decided December 21, 1916.

Assumpsit by the city of Bay City against the Lumbermen's State Bank for money had and received. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Joslyn & Houghton,* for appellant.

*Coumans & Gaffney,* for appellee.

PERSON, J. This action was brought to recover the sum of $4,000 theretofore paid by plaintiff to defendant in connection with the sale of certain bonds, known as the Wenonah Park bonds.

By an act of the legislature, approved March 14, 1907, the city of Bay City was authorized to acquire a site for and to lay out, establish, make, alter, and regulate a public park and grounds; and for that purpose to borrow not to exceed $200,000 and issue its bonds therefor. Section 3 of the act provided:

"If authorized by the vote of the electors, said loan shall be secured by the bonds of the city payable at such times, not less than ten years after the date of their issue, and shall bear such rate of interest, not exceeding four per cent. per annum, as said common council shall determine. The said bonds shall be indorsed 'Bay City Bonds' and numbered consecutively, and no sale thereof shall be negotiated at less than face value or par. The proceeds derived from the sale of said bonds shall be paid to the city treasurer and by him placed to the credit of a fund to be known as a public park fund. No appropriation or payment out of said fund shall be ordered by the common council, or made, except for the purpose of acquiring a site for and laying out, establishing, making and maintaining a public park and grounds." Act No. 409, Local Acts 1907.

At the same session of the legislature, and by an act approved June 27, 1907, provisions were made for the appointment of a board of park commissioners to take charge of the public parks and grounds of the city, and exercise supervision over them. The common council was required by this act to sell the bonds authorized by the preceding act and deposit the proceeds with the treasurer of the city, to the credit of a fund to be known as the "Wenonah Park fund." And it was further provided that:

"No money shall be drawn therefrom except upon the order or warrant of said commission, duly authenticated by its secretary and signed by its chairman and countersigned by the comptroller of said city. The proceeds of the sale of said bonds shall be used exclusively for paying the cost and expense of purchasing and condemning or otherwise acquiring the property herein described for said Wenonah Park, and to pay the cost and expense of laying out the grounds so acquired and improving and making same into a suitable public park, it being the intent and purpose of this act that all of the funds obtained from the sale of said bonds shall be expended exclusively for said Wenonah Park." Act No. 720, Local Acts 1907, § 11.

Section 16 of the same act reads as follows:

"Said board of park commissioners shall have power and authority to contract for the sale of and to sell at the best price obtainable, in their judgment, any buildings, building material or salvage, upon the site of said Wenonah Park; also to contract for the removal of such buildings, building material and salvage therefrom on the best terms which, in their judgment, may be obtained. The proceeds of the sale of such buildings, building material or salvage shall be paid into the treasury of Bay City and there deposited to the credit and as part of said Wenonah Park fund, to be used, expended and paid out for the purpose and in the manner in this act provided."

At the April election, following the passage of these acts, the issuance of the bonds was duly authorized by a vote of the electors; and after an unsuccessful attempt to effect their sale by advertisement, the common council received the following proposition from the defendant bank:

> "BAY CITY, MICHIGAN, July 5, 1907.
> "To the Honorable GUSTAVES HINE,
>    "Bay City, Michigan.
> "*Dear Sir:* Concerning the park bonds of Bay City to be issued, I am authorized to make the following proposition: For the issue of $200,000 we will take these bonds at par with accrued interest from date of bonds up to and including June 30, 1907, less a commission or discount of $4,000.
>                    "H. H. NORRINGTON,
>        "Vice President Lumbermen's State Bank."

In July of the same year, the ways and means committee of the common council made a report to that body, which was adopted by unanimous vote. This report read as follows:

"*Gentlemen:* We have had under consideration the matter of the sale of park bonds, and have received a proposition from the Lumbermen's State Bank to take said bonds and pay the city par and accrued in

terest therefor, said bonds to be delivered to said bank August 1st, or as soon thereafter as possible, on condition that the park commission will pay to the said bank the sum of $4,000 for negotiating the sale of said bonds at par and accrued interest from the receipt of rents from the buildings now located on the property intended for park purposes after the same has been acquired by the park commission. We therefore recommend that such proposition be accepted, and that the mayor and comptroller procure the said bonds at once, properly lithographed and designated Wenonah Park bonds, in form to the satisfaction of the bank's attorney."

On October 7, 1907, the bank made the following reply to this action of the common council:

"BAY CITY, MICHIGAN, October 7, 1907.
"To the Honorable MAYOR AND COMMON COUNCIL,
      "Bay City, Michigan.
"*Gentlemen:* Our proposition to purchase the $200,-000 park bonds having been accepted by your honorable body with certain modifications with reference to details fully set forth in a report of your ways and means committee, adopted and approved by your honorable body July 15, 1907, we herewith accept such conditions and the provisions set forth in said report.
            "Yours, etc.,
            "LUMBERMEN'S STATE BANK,
      "By H. H. NORRINGTON, Vice President."

After the action of the common council above recited, and prior to its acceptance by the bank, the board of park commissioners had, under date of September 9th, passed the following resolution:

"Resolved, that the authorization by the common council of Bay City to this board to pay the Lumbermen's State bank the sum of $4,000 on the sale of the park bonds to said bank be and is hereby approved, and that this commission will promptly comply with said provision, and will pay same at the earliest opportunity after the sale is consummated and said bonds are delivered to said bank, the said $4,000 to be

paid from the rents and salvage from said Wenonah Park property."

The defendant bank offered to show upon the trial that the proposition from the bank referred to in the report of the ways and means committee was an oral proposition, and not the one contained in the letter from the bank of July 5th. The evidence was excluded and its rejection is assigned as error; but, even if received, it would not have been material. It is not shown that it ever came to the knowledge of the common council, and, whatever it was, the contract itself is contained in the report of the committee as adopted by the council, and its acceptance by the bank.

Before any of the bonds were delivered to the bank the following agreement, bearing date May 1, 1908, was signed by its president and the mayor of the city:

"Whereas, the two hundred thousand dollar bonds, commonly known as the Park bonds, have heretofore been sold to the Lumbermen's State Bank, and, whereas, said Lumbermen's State Bank has heretofore been designated as a depository of the proceeds derived from the sale of said bonds, they to indemnify the city in the sum of two hundred thousand dollars ($200,000), it is hereby agreed and understood that said Lumbermen's State Bank is to immediately take such bonds and credit the city to the benefit of the park fund in the sum of two hundred thousand dollars, and to furnish the city with an indemnity bond in the sum of fifty thousand ($50,000) dollars to be signed by some satisfactory surety company.

"Also that said bank shall give to the city a bond in the sum of one hundred and fifty thousand ($150,-000) dollars, to which shall be attached one hundred and fifty thousand dollars of the aforesaid park bonds as collateral security; both of said bonds to indemnify and save the city harmless from any loss on the deposit of said two hundred thousand ($200,000) dollars in said Lumbermen's State Bank.

"That on the delivery of said indemnity bonds to the city treasurer he will deliver to said Lumbermen's

State Bank the aforesaid park bonds in the sum of two hundred thousand dollars and will receive from said bank a receipt for said two hundred thousand dollars together with the amount of interest now accrued on said bonds.

"It is further agreed and understood that upon application from the bank the city treasurer will deliver to it such portions of the one hundred fifty thousand ($150,000) dollars of bonds held as collateral to any amount of same not exceeding the amount guaranteed by the said fifty thousand ($50,000) dollars indemnity bond, or to such other amounts as a satisfactory indemnity bond shall be furnished by the said bank to the city treasurer.

"This memorandum of agreement made and entered into by and between the parties interested for and on behalf of the city and said bank, this first day of May, A. D. 1908."

The bank assumed control of the bonds and credited the Wenonah Park fund, on May 18, 1908, with their face value—$200,000—and with the accrued interest thereon; and from that time the park commissioners drew against the fund as their necessities required. The park commissioners also deposited with the bank to the credit of the same fund the moneys received by them for rents from the park property, and from the sale of buildings thereon.

At some period, the exact date of which does not seem to be given, a further agreement was entered into between the bank and the city, the agreement being signed by the president of the bank and the mayor. This agreement begins with the following recital:

"Whereas, the city of Bay City has heretofore sold to and the Lumbermen's State Bank has heretofore purchased Bay City bonds in the amount of two hundred thousand dollars, which bonds were issued for the purpose of acquiring and constructing a public park; that on said sale of said bonds the said Lumbermen's State Bank gave to the city an indemnity bond in the sum of one hundred and fifty thousand dollars and a certificate of deposit issued by the People's State

Bank of Detroit in the sum of fifty thousand dollars, which said certificate and bond were given by said bank to said Bay City to indemnify said city against any loss by reason of said Lumbermen's State Bank then and there becoming and being the city depository for said two hundred thousand dollars—the proceeds received from the sale of said bonds"

—and then provides for a transfer and conveyance of $50,000 of the bonds from the bank to the city, to be held in trust as security for the city deposits then in the bank.

On May 13, 1910, the commission of $4,000 provided for by the report of the ways and means committee as adopted by the common council was paid to the bank out of the Wenonah Park fund. It was to recover back this payment that the present action was brought. The moneys credited to the fund for the bonds and the other things mentioned had practically all been drawn out by the park commission except enough to make the payment. The bank had on hand, at the time, about $30,000, par value, of the bonds. The balance it had sold, from time to time, in small quantities. So far as the record shows the bonds so remaining are yet in the hands of the bank.

It is the theory of counsel for plaintiff that the transaction between the city and the bank constituted an absolute sale and purchase of the bonds at par, and that the payment of $4,000, as a so-called commission, amounted in effect simply to a rebate or discount in violation of the statute. The trial court took this view of the matter and directed a verdict for plaintiff. The bank contends that it never purchased the bonds, but sold them for the city, and that the commission was compensation for its work which the city was authorized to pay.

To our minds the transaction was a sale and purchase of the bonds. The parties not only characterized it as such in express terms, but it possessed every

fundamental attribute of a sale and purchase. It was for a certain fixed price paid by the bank. The city thereafter had no interest in the selling value of the bonds. Had they appreciated in value the bank and not the city would have received the benefit. Had they depreciated the loss would not have fallen upon the city. It does not appear that the bank ever made any report of its sales to the city or that there was an accounting for the proceeds of the bonds it sold. In all of the papers executed after the bank had accepted the proposition contained in the report of the ways and means committee, the transaction was expressly recognized as a sale and purchase.

It is unnecessary to determine whether or not, under the limitations of the act, the city would have had power to pay a commission to an agent or broker for selling the bonds. If, as we have found to be true, the bank purchased the bonds outright, it was not an agent of, nor did it sell the bonds for, the city. It did not render the city any services for which it was entitled to a commission. The money paid to the bank amounted in substance and effect to a discount in violation of law, which required the bonds to be sold at par. *Village of Ft. Edward* v. *Fish*, 156 N. Y. 363 (50 N. E. 973); *Appeal of Whelen*, 108 Pa. 162 (1 Atl. 88). Further than this, the control of the "Wenonah Park fund" by the park commission was purely statutory, and it had no authority to make any payment therefrom to a purchaser, as such, of the bonds. Neither does the doctrine of estoppel apply, as contended for by the bank, inasmuch as the payment not only was unauthorized, but in violation of the express provisions of the statute.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.