# COUNTY OF KOOCHICHING v. GEORGE A. ELDER AND OTHERS.

## JOHN NUVEEN & COMPANY, APPELLANT.[1]

February 6, 1920.

No. 21,492.

**Sale of county bonds below par, void.**

1. Under section 5542, G. S. 1913, a contract made by a county for sale of its bonds at less than par, is, as between the original parties, void. Payment of a commission to the buyer is but a discount.

**Same — recovery of commission paid.**

2. If the bonds are sold for less than par, the county may affirm the transaction and recover the amount of the discount from the buyer.

**Third person liable to county, when.**

3. When a bid for less than par has been accepted by one without ability to complete the purchase, one who with full knowledge of the facts, and with an agreement to divide the discount, becomes a participant in the transaction, receives the bonds from the county and pays the county for them, is liable to respond to the county for the amount of the discount.

**Harmless error.**

4. Other alleged errors present no ground for reversal.

Action transferred to the district court for Crow Wing county to recover $20,605.95. The case was tried before McClenahan, J., who when plaintiff rested denied the motion of defendant John Nuveen & Company to dismiss the case on the merits and at the close of the testimony motions of both parties for directed verdicts, and a jury which returned a verdict for $11,213.80. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant John Nuveen & Company appealed. Affirmed.

*John H. Brown, John H. Hill, Ambrose Tighe* and *Busby, Weber, Miller & Donovan,* for appellant.

*N. B. Arnold, M. E. Ryan, F. Jevne,* County Attorney, and *Fryberger, Fulton & Spear,* for respondent.

[1] Reported in 176 N. W. 195.

HALLAM, J.

In January, 1915, Kochiching county issued $186,000 of ditch bonds. Defendant Nuveen was in the business of buying and dealing in municipal bonds in Chicago under the name of John Nuveen & Company. George A. Elder was a bond broker at Duluth. He had organized a corporation known as the Commercial Investment Company. He controlled the corporation, owned practically all its stock, and used it simply as an instrumentality for carrying on his personal business. Neither Elder nor his corporation were possessed of any considerable means, and could not buy such a bond issue as this, except by borrowing the money, or securing some person of means, to finance the purchase. Nuveen had, or commanded, large means, and was able to handle this bond issue. .

There is evidence that, for a period of ten years, Elder had bought bonds in co-operation with Nuveen, on a profit-sharing basis. They had handled three previous issues for Koochiching county. Elder would buy the bonds, Nuveen would take them up. If necessary, Nuveen would advance money to make deposits to accompany bids. Often the bid was made in Nuveen's name.

There may be difference of opinion as to how their relationship should be defined. Nuveen himself, in referring to the former bond transactions with Koochiching county, said: "We (Nuveen & Company) handled three previous issues for county through broker," and "former issues were in reality handled by us instead of Elder." The fact is that Nuveen and Elder had been engaged in a joint venture, and, whatever the form of the transaction as far as the municipality was concerned, they made division of the profit arising therefrom.

Then came a break in their relations. For the purchase of the issue of bonds involved in this action they interposed competitive bids. Elder succeeded in outwitting Nuveen's representative, and he secured an acceptance of his bid for the bonds, nominally for the Commercial Investment Company, in fact for himself, and secured an agreement by which the county agreed to pay him a commission of five per cent. Nuveen then proceeded to negotiate with Elder. Elder's testimony is that he told Nuveen the whole transaction, told him of the price and the commission, and he testified that they closed this deal on practically the same basis as they had closed every other deal. Nuveen was to put up the money.

Elder was to contribute one per cent, and on the last half, two per cent, of the five per cent commission, and it was calculated that, by an additional profit of five per cent by selling the bonds at a premium, Nuveen could secure a satisfactory return. When the time came to issue the bonds, they were forwarded by the county, through the bank at International Falls, which acted as the county's depository, to a Chicago bank. On their arrival Nuveen paid par and interest, less his share of the commission agreed upon.

1. Section 5542, G. S. 1913, provides that a county board "shall have the power to negotiate said bonds as they shall deem for the best interest of said county, but for not less than their par value." Under such a statute a contract, made by a county for sale of its bonds at less than par, is, as between the original parties, void. A sale at par, with an agreement for the payment of a commission to the purchaser, is but an evasive way of accomplishing the same result, and such a transaction is void. Dillon, Mun. Corp. p. 1400; Abbott, Public Securities, § 245; Church v. Hadley, 240 Mo. 680, 145 S. W. 8, 39 L.R.A.(N.S.) 248; Bay City v. Lumbermens State Bank, 193 Mich. 533, 160 N. W. 425; Appeal of Whelen, 108 Pa. St. 162, 1 Atl. 88, and this is true, though the net result is the payment of interest on the money received at a rate not exceeding the rate which the municipality might agree to pay. Hunt v. Fawcett, 8 Wash. 396, 36 Pac. 318.

This is not like the employment of a fiscal agent and payment to him of a commission to make a sale. The two transactions are not the same. A commission paid to a buyer is plainly a sale at a discount. A buyer receiving the commission may also keep any profit he may make on a resale, while, if he is an agent, the municipality is entitled to the benefit of the profit on any sale he may make.

2. If bonds are sold for less than par and the purchaser has again disposed of them, we think the county may recover the amount of the discount from the person to whom it sold them. See Bay City v. Lumbermen's State Bank, 193 Mich. 533, 160 N. W. 425.

3. As far as Elder is concerned this sale was for less than par. The commission was a mere sham and in fact a discount. The right to recover the amount thereof from Elder is clear. If Nuveen knew all the facts and the jury, upon sufficient evidence, found that he did, we think

the right to recover from Nuveen is also clear. Although the original bid and its acceptance by the county was a transaction between the county and Elder alone, Nuveen later became a party to the transaction. He adopted all that Elder had done and accepted the fruits of it. It was more than mere ratification. Ratification presupposes an act already done or completed. In this case Nuveen participated in, and actually carried through, the negotiation begun by Elder and in his own name, or for him in the name of his corporation. When one becomes a party to an illegal scheme at any stage of its execution, it is the same as though he were a party to it from its inception. Gammons v. Gulbranson, 78 Minn. 21, 80 N. W. 779. See Virtue v. Creamery Package Mnfg. Co. 123 Minn. 17, 40, 142 N. W. 930, 1136. The fact that Elder, in form, made a sale of the bonds to Nuveen, and that Elder received his part of the discount by presenting a bill to the county, are matters of form rather than substance. In substance Nuveen was a participant in the transaction.

4. Other questions raised on the appeal do not require extended discussion. The complaint contains much immaterial matter, but we think it sufficiently states the cause of action which we hold was established.

What has been heretofore said disposes of the objection that it was error to admit evidence of prior transactions between Elder and Nuveen. These facts are closely related to the present transaction.

It was also proper to receive evidence of the details of the transaction by which the negotiation was closed. In view of the relation of the parties, this history of the transaction was properly in the case.

We have examined with care the objection raised to certain language of the court in the presence of the jury and to the charge of the court. They present no reversible error.

The court told the jury that "this five per cent" was divided between Elder and Nuveen. It was.

It was not error, though perhaps not necessary, to instruct as to what constitutes constructive knowledge.

It was not error to instruct that Nuveen was liable, if at all, for the full amount of the discount. As a participant in the transaction, he clearly was so liable or not at all.

Order affirmed.