IN THE MATTER OF THE ALLOWANCE BY THE BOARD OF
COUNTY COMMISSIONERS OF COOK COUNTY, MIN-
NESOTA, OF A CLAIM OF F. B. MYERS AND
AGAINST SAID COUNTY FOR $5,000.

FIRST NATIONAL BANK OF ST. PAUL v. COUNTY OF COOK.[1]

June 4, 1920.

No. 21,823.

**Sale of bonds — implied powers of county.**

1. The implied powers of a county are those only which are necessary
to enable it to exercise either its inherent or express powers. The
grant to counties of power to issue and sell their bonds carries with it
implied power to do whatever is essential to the efficient exercise of
the power expressly granted.

**Agreement to pay for assistance in making sale.**

2. Under such implied power, a county may agree to pay a reasonable
sum for necessary and proper assistance in disposing of its bonds, when,
in the judgment of the officers charged with the duty of selling the
bonds, it is necessary or expedient to do so.

**Agent entitled to compensation, even for efforts made before employment.**

3. If an agent employed to sell county bonds produces a purchaser
to whom the bonds are sold, in accordance with the terms of his em-
ployment, and he was the procuring cause of the sale so that it was the
direct result of his efforts to bring it about, he is entitled to his agreed
compensation, even though he secured the purchaser as the result of his
efforts prior to the date of his employment.

**Claims on express contract need not be itemized.**

4. When a claim against a county is founded on an express contract
for the payment of a fixed sum as compensation for services rendered,
the county board has no discretion to exercise, but must allow and pay
the stipulated compensation if the services have been performed. Such
a claim need not be itemized as provided by section 760, G. S. 1913.

**Advertisement for bids inapplicable to contract of employment.**

5. Section 1091, G. S. 1913, requiring contracts for work or labor,
when made by certain counties, to be let after advertising for competi-

[1] Reported in 177 N. W. 1013.

tive bids, has no application to a contract of employment under which the personal service of an agent is engaged.

**Decision sustained.**

6. The findings are supported by the evidence and justify the conclusions of law.

From the decision of the county board of Cook county allowing a claim of F. B. Myers amounting to $5,000, certain taxpayers and the county attorney appealed to the district court for that county. The plaintiff bank, as assignee of Myers, filed its complaint against the county. The answer set up that the alleged contract between the county and Myers was null and void and was not a legal charge against the county. The appeal was heard by Freeman, J., who made findings and ordered judgment directing the issue of a warrant in favor of plaintiff. From the judgment entered pursuant to the order for judgment, the county of Cook appealed. Affirmed.

*S. C. Murphy,* County Attorney, and *H. H. Phelps,* for appellant.
*Ambrose Tighe,* for respondent.

LEES, C.

In December, 1918, one Myers presented to the county board of Cook county a verified claim against the county for $5,000. It was allowed by the unanimous vote of the board, and Myers subsequently assigned it to the plaintiff. An appeal from its allowance was taken to the district court of Cook county by the county attorney upon the request of 11 taxpayers, made pursuant to section 674, G. S. 1913. The court made findings in plaintiff's favor and the county appeals from the judgment entered thereon.

Prior to September 16, 1918, the county board had resolved to issue bonds to refund the floating indebtedness of the county, amounting to $100,000. The bonds were advertised for sale, September 16 being the date set for receiving bids. No sealed bids were received. Myers, accompanied by M. W. Matteson, of Kalman, Matteson & Wood, was present. Myers was then engaged in the automobile business at Duluth, but had been connected with a bank at Grand Marais and had some experience in selling bonds. Kalman, Matteson & Wood were bond

brokers at St. Paul.  Myers testified that in August he had learned from individual members of the county board that the county was about to issue the bonds, and that he had. interviewed or corresponded with several bond houses for the purpose of interesting them in their purchase; that he had succeeded in interesting Mr. Matteson, with whom he had driven from Duluth to Grand Marais to be present at the sale; that he controlled the bid made by Mr. Matteson in behalf of his firm, which would not have been submitted if the board had not accepted his (Myers) proposition.  In substance, this proposition was that he should act as the agent of the county in preparing and marketing the bonds and should furnish the engraved bonds and the services of a competent bond attorney to take charge of the legal proceedings and pass on the validity of the bonds.  As compensation for his services and to cover his outlays, he was to receive one-half of one per cent yearly on the face of the bonds actually issued, but not to exceed the sum of $5,000.  The proposition was reduced to writing and presented to the board on the day of the sale.  On the same day Matteson presented a proposal by his firm to purchase the bonds at par with accrued interest from their date to the date of their delivery.  Both propositions were accepted by one motion, put and carried on the day of the sale, but the board reserved the right to accept any better offer for the bonds, if one were made within ten days.  No better offer was received, and the bonds were subsequently delivered to Kalman, Matteson & Wood, who paid for them in accordance with the terms of their proposition. They have advanced the money required to pay the attorney's fees and the expense of engraving the bonds, and have incurred expenses in connection with trips to Duluth and Grand Marais made by their representatives in carrying out the details of the transaction.  These expenditures are to be refunded by Myers when he receives his commission and the remainder of the commission is to belong to him alone. To secure the performance of his agreement to refund, Myers has assigned his claim against the county to the First National Bank of St. Paul.

1. By section 1855, G. S. 1913, counties are granted power to issue and sell bonds for the purpose of refunding their floating indebtedness, but the bonds cannot be disposed of for less than their face value with

accrued interest. G. S. 1913, § 1852. Counties have no express power to incur or pay any expenses in connection with the issue or sale of their bonds. Have they implied power to do so? The implied powers of a county are those only which are necessary to enable it to exercise either its inherent or express powers. Grannis v. Board of Co. Commrs. of Blue Earth County, 81 Minn. 55, 83 N. W. 495; State v. Smith, 84 Minn. 295, 87 N. W. 775. The grant to counties of power to issue and sell their bonds carries with it the implied power to do whatever is essential to the efficient exercise of the power expressly granted. Milwaukee & St. P. Ry. Co. v. City of Faribault, 23 Minn. 167; State v. Brown, 111 Minn. 80, 126 N. W. 407; Mayor of New York v. Sands, 105 N. Y. 210, 11 N. E. 820; Crofut v. City of Danbury, 65 Conn. 294, 32 Atl. 365.

In State v. West Duluth Land Co. 75 Minn. 457, 78 N. W. 115, the contract with the broker provided that he should pay for lithographing the bonds and for legal services and other expenses incident to the sale, and should receive ten per cent of the face of the bonds as his compensation. It was contended that the bonds were void because the county received less than their face value as the net proceeds of the sale. The contention was not sustained, but the court remarked that there might be cases where the facts would show conclusively that an agreed compensation for making a sale of bonds was a palpable evasion of the statute forbidding a sale at less than their face value.

In Cushman v. Board of Co. Commrs. of Carver County, 19 Minn. 252 (295), it was held that the county could not defend an action brought to recover on one of its bonds on the ground that the county board had negotiated the sale of the entire issue through an agent appointed for that purpose.

In County of Koochiching v. Elder, 145 Minn. 77, 176 N. W. 195, it was held that a sale of bonds at par, with an agreement for the payment of a commission to the purchaser, is but an evasive way of selling the bonds at less than their par value.

In other jurisdictions, it has been generally held that a statute authorizing the sale of municipal bonds at not less than par carries with it implied authority to employ necessary and proper assistance in disposing of them and to pay a reasonable sum for the services rendered

by the person so employed when, in the judgment of the officers charged with the duty of selling the bonds, it is necessary or expedient to do so. Armstrong v. Ft. Edward, 159 N. Y. 315, 53 N. E. 1116; Church v. Hadley, 240 Mo. 680, 145 S. W. 8, 39 L.R.A.(N.S.) 248; Miller v. Park City, 126 Tenn. 427, 150 S. W. 90, Ann. Cas. 1913E, 83; Davis v. San Antonio (Tex. Civ. App.) 160 S. W. 1161. It is quite possible that the statute prohibiting a sale at less than par may be evaded by a secret agreement for a division of the commission between the purchaser of the bonds and the agent employed to sell them. But the agent's right to recover the commission agreed upon cannot be defeated in the absence of evidence satisfying the court of the existence of such an understanding. The findings in the case at bar negative its existence. It is expressly found that the contract made with Myers was reasonable; that the board exercised its discretion and judgment in making it, and that the allegation in the answer that Myers was the agent of Kalman, Matteson & Wood and that they were to share in his commission, is not sustained by the evidence. Under these findings, it cannot be held as a matter of law that the contract was invalid.

2. It is contended that when Myers' proposition was accepted the bonds were already sold, or at least they were sold simultaneously with the acceptance of his proposition, and hence there was no consideration for the agreement to pay him for his services. Myers testified that in fact he made his proposition first and it was first accepted. We think it is immaterial whether he produced a purchaser as a result of his efforts prior or subsequent to the date of his employment. The question is: Did he in fact produce the purchaser to whom the bonds were sold in accordance with the terms of his employment and was he the procuring cause of the sale, so that it was the direct result of his efforts to bring it about? The trial court found that he did secure the purchaser and that he has fully performed all services required of him by the terms of his employment, and it has not found that the two propositions were accepted simultaneously. The evidence supports the conclusions of the court with respect to the facts, although it might have been inferred that Myers' intervention did not effect the sale. Moreover, procuring a purchaser was only a part of his agreement. In carrying it out, he has become liable for attorney's fees and other ex-

penses amounting to about $1,800, and his undertaking to defray these expenses was part of the consideration for the contract made by the county.

3. Where a demand against a county is founded on an express contract for the payment of a fixed sum as compensation for services rendered, the county board has no discretion to exercise, but must allow and pay the stipulated compensation if the services have been performed. Merz v. County of Wright, 114 Minn. 448, 131 N. W. 635. Myers presented a verified claim against the county as provided by section 760, G. S. 1913, based on his contract with the county. It was not necessary to itemize it or set forth in detail his expenditures in performing the contract. If it was valid, he was entitled to the whole of the agreed compensation. City of Fergus Falls v. Board of Co. Commrs. of Otter Tail County, 88 Minn. 346, 93 N. W. 126.

4. We are of the opinion that section 1091, G. S. 1913, prohibiting counties with a population of less than 75,000 from making contracts for work or labor without first advertising for competitive bids, does not apply to a contract of employment under which the personal service of an agent is engaged by the county. People v. Flagg, 17 N. Y. 584; Harlem Gaslight Co. v. Mayor, 33 N. Y. 309; Gleason v. Dalton, 28 App. Div. 555, 51 N. Y. Supp. 337; O'Brien v. Niagara Falls, 65 Misc. 92, 119 N. Y. Supp. 497.

5. The contention that Myers and the purchasers of the bonds were to divide the former's commission is without support in the evidence and is contradicted by the findings. This is also true of the contention that Myers was simultaneously acting as the agent of the purchasers and of the county.

We conclude that the findings are sustained by the evidence and that the facts found justify the conclusions of law. The judgment appealed from is affirmed.