## ROGERS & TRACY, Inc., v. BOARD OF EDUCATION OF PARK RIDGE et al.

### No. 6727.

Circuit Court of Appeals, Seventh Circuit.

Nov. 30, 1938.

Rehearing Denied Jan. 18, 1939.

774

David B. Maloney and Charles C. Wooster, both of Chicago, Ill., for appellants.

Homer H. Cooper and Robert S. Cushman, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal is from a declaratory judgment of the District Court. It involves the validity and title of certain tax anticipation warrants issued by the Board of Education of Park Ridge School District 64, in Illinois. The court held the warrants valid, directed the payment of those which were unpaid, and permanently enjoined the Board and its several members from doing anything affecting the validity or enforceability of the warrants involved.

The Board of Education, on May 6, 1936, received bids for $85,000, face value, of its 1936 educational tax anticipation warrants, issued pursuant to statutory authority. See Illinois Revised Statutes (1937) chap. 122, § 125.[1] Among the bids

---

[1] "When there is no money in the treasury of any school district of this State, whether governed by either or both the general school laws, or any special charter, to defray the necessary expenses of the district, including amounts necessary to pay maturing principal and interest of bonds, the directors, board of education, or board of school inspectors, as the case may be, may issue warrants, or may provide a fund to meet said expenses by issuing and disposing of warrants, drawn against and in anticipation of any taxes levied for the payment of the necessary expenses of the district, either for educational or for building purposes, or for the payment of maturing principal and interest of bonds, as the case may be, to the extent of seventy-five per cent of the total amount of the tax so levied. Such warrants shall show upon their face that they are payable in the numerical order of their issuance solely for such taxes when collected, and shall be received by any collector of taxes in payment of the taxes against which they are issued, and such taxes shall be set apart and held for their payment.

"Every warrant issued under the provisions of this section shall bear interest, payable only out of the taxes against which it is drawn, at a rate not exceeding six per centum per annum, from the date of its issuance until paid or until notice shall be given by publication in a newspaper or otherwise, that the money for its payment is available and that it will be paid on presentation, unless a lower rate of interest shall be specified therein, in which case the interest shall be computed and paid at said lower rate."

received was that of Jack A. Stull.[2] The minutes of the Board on May 7, 1936, show that Stull's bid was accepted. Following this meeting the secretary of the Board prepared a transcript of the proceedings. It disclosed that the bonds had been delivered and paid for by the purchaser, at a price not less than par and accrued interest. It was signed by the township school treasurer and the president and secretary of the Board, and delivered to Chapman and Cutler, attorneys. They later approved the warrants by written opinion, which they delivered to Stull.

On May 19, 1936, the warrants numbered 1 to 110, inclusive, were signed, and shortly thereafter they were delivered to Stull who executed his receipt therefor. On June 4, 1936, Stull took the opinion and all the warrants to the office of appellee which selected and purchased warrants 1 to 80, inclusive, of the par value of $70,000, for which it caused to be issued a bank cashier's check for $68,950 payable to the township treasurer, having deducted the one and one half per cent alleged service charge. The check to the treasurer was delivered to Stull, who in turn delivered it to the treasurer. These warrants are not in issue. On July 6, 1936, appellee obtained from Stull Nos. 81 to 90, inclusive, of the warrants, having a par value of $5,000, paid for by appellee's check for $4,800, payable to Stull. These were sold by that company to its customers within a day or so afterward. On September 8, 1936, appellee obtained from Stull the remaining warrants numbered 91 to 110, inclusive, of the principal amount of $10,000, paying for them with its check for $8,296.67 payable to Stull. A day or so later it sold to its customers warrants numbered 91 to 100, inclusive, of the principal amount of $5,000. The remaining ten warrants in the principal amount of $5,000, numbered 101 to 110, inclusive, were never sold or disposed of by appellee. Stull cashed the two checks made payable to him, and retained the money, and appellant, the school district, has never been compensated for warrants numbered 81 to 110, inclusive.

On September 11, 1936, appellee informed the township school treasurer that it had recently obtained from Stull the last $10,000 of warrants, thereby acquiring the entire issue, and upon inquiry appellee also informed him that it had paid Stull the full purchase price for each lot, and gave him the dates of the several transactions. Appellee then learned for the first time that Stull had not paid for warrants numbered 81 to 110, inclusive.

On October 9, 1936, the Board adopted a resolution declaring warrants 81 to 110 null and void, and directing Stull to return them for cancellation, and ordered payment on them stopped. Notice of this resolution was served upon appellee on October 13, 1936, and such notice was attempted to be served upon Stull but he was not found. On October 14, 1936, appellee notified the Board of the invalidity of its resolution, and that it would resort to the necessary legal proceedings against the Board for the protection of its interests and those of its customers.

On October 27, 1936, the Board again passed a resolution declaring warrants 81 to 110, inclusive, void. It recited that the warrants were in the hands of third persons who had received them "without the receipt of the township treasurer of the par value," or of any other compensation, and it directed the township treasurer to refuse to pay the warrants until the sum of $15,000, with accrued interest from May 12, 1936, had been paid to him by the holders or their agents. Notice of this resolution was ordered given to the last named holders, and appellee received such notice on October 28, 1936, whereupon it set up on its books and, since that time, has carried on its accounts as a contingent liability the sum of $10,000 with interest

---

[2] "May 6, 1936.
"Board of Education
"Park Ridge School District #64
"Gentlemen: I hereby bid par for $85,-000 worth of school tax anticipation warrants for the school year 1936 and 1937.
"The first 40% of the levy is to bear an interest rate of 2¾%. The remaining 60% of the levy is to bear 3%.
"As explained to Mr. Norman Olson, the delivery can be made in full at once, or if you prefer, the first 40% of the levy may be made now and the remaining 60% delivered six months later.
"Very truly yours,
" (Signed) Jack A. Stull.
"P.S. My service charge will be 1½% and the warrants are to carry Chapman and Cutler opinion."

at three per cent from May 12, 1936, to protect itself and its possible responsibilities to its customers who purchased the warrants.

On January 9, 1937, appellee's original bill of complaint was filed, and on March 25, 1937, its amended bill was filed. Appellants filed their motion to dismiss the amended bill on April 28, 1937. On July 8, 1937, before the motion to dismiss was heard, the Board passed a resolution purporting to correct the record of its minutes of May 7, 1936, to show that it had accepted Stull's proposition to sell the bonds for the Board, rather than to buy them from the Board.[3] On July 12, 1937, upon hearing, the court overruled appellants' motion to dismiss, and issued an order temporarily restraining appellants from doing any act affecting the validity or enforceability of the warrants involved, conditioned upon appellee filing a bond in a specified amount, which bond was filed and approved. On August 2, 1937, appellants filed their amended answer. Later the bill was amended by substituting several new members of the Board as parties; and still later, on June 6, 1938, it was supplemented by inserting the Board's record of July 8, 1937, in which it purported to correct its minutes with respect to Stull's proposition and its acceptance. On the same day appellants' amended answer of August 2, 1938, was ordered to stand as their answer to the complaint as amended and supplemented.

The findings of fact constitute a full recital of the evidence, rather than ultimate facts, but, as there is only one factual dispute here, we have attempted to set it forth with those ultimate facts which bear upon the legal contentions raised.

It is first contended by appellants that the Board's corrected record speaks the truth, and that Stull's proposition was intended by him as an offer to sell the warrants for the Board which accepted it as such. Hence they say Stull merely acted as an agent for the Board in the sale of the warrants to appellee and that payment by it to Stull did not constitute payment to the Board, or the township treasurer. We think there is no merit in this contention. There is no ambiguity in the language of Stull's proposition. It was a plain offer to buy the warrants at a certain price, and the Board just as plainly accepted it, as shown by their record. The transcript disclosed that the warrants had been delivered to the purchaser and paid for by him, it was signed by the officers of the Board and the township school treasurer, and was delivered to the Board's attorneys for their opinion as to the validity of the issue. The warrants were delivered by the Board to Stull, who in turn delivered them, together with the opinion of approval, to appellee who paid for them.

Appellants rely upon three circumstances to support their contention that

---

[3] "Resolution

"Whereas, at the meeting of May 7th, 1936, the Secretary of the Board of Education, Miss Mildred Schrader, took the minutes of the said meeting in shorthand; and

"Whereas, in the minutes of the said meeting there appears of record the following:

" 'Mr. Olson moved, seconded by Mr. Helmick, that we accept Mr. Stull's proposition to buy $85,000, 1936 educational tax anticipation warrants; $34,000 to bear interest at the rate of 2¾% and $51,000 to bear interest at the rate of 3%, with the understanding that the transaction be completed on or before June 1, 1936. * * *'

"Whereas, the said record of the said proceedings is not correct, and the original minutes of the said Mildred Schrader, Secretary, show that the said motion should read:

" 'Mr. Olson moved, seconded by Mr. Helmick, that we accept Mr. Stull's proposition to sell $85,000, 1936 educational

tax anticipation warrants; $34,000 to bear interest at the rate of 2¾% and $51,000 to bear interest at the rate of 3%, with the understanding that the transaction be completed on or before June 1, 1936. * * *'

"Be It Therefore Resolved by the Board of Education of School District 64, that the minutes of the meeting of the Board of Education of School District 64, of May 7th, 1936, be, and that portion of the said minutes referring to the acceptance of the Board of Jack Stull's proposition, is hereby corrected to read as follows: * * * (Here follow the corrected minutes as above).

"Be It Further Resolved that the Secretary of the Board of Education of School District 64, be, and she is hereby instructed to correct the said minutes of May 7th, 1936, in accordance with this resolution.

"This resolution shall be in full force and effect from and after its adoption and approval."

Stull acted merely as an agent for the Board in the sale of the warrants to appellee. They first contend that the postscript to his offer, wherein he stated that his service charge would be one and a half per cent, clearly indicates that this was to be his commission as the Board's agent. Standing alone this language reasonably might be so construed, but when the entire offer is considered, there seems to be no reason for such construction to the exclusion of others just as plausible. For instance the record discloses that this Board had experienced difficulty in disposing of similar warrants at par. This condition is well known to have existed throughout the country. In this case appellants contend that it would be unlawful for the Board to sell them for less than par. The Statute authorizing the issue does not expressly prohibit this from being done. It is a matter of common knowledge, however, that many question the right, and profess to have discovered a subterfuge whereby, in effect, they may purchase such warrants at less than par, by bidding par and charging a service fee to the issuer. We have no way of knowing Stull's precise intention, but construing his proposition as an entirety we think it reasonable to conclude that he intended to adopt the latter plan rather than create an agency.

Appellants next contend that agency is established by the fact that appellee paid for the first lot of warrants by causing a bank cashier's check to issue to the township treasurer. The record does not disclose why this was done, neither does it disclose why Stull was permitted to carry the entire issue of bonds around in his case if he had not bought them. It is sufficient to say that the payment by check to the treasurer, delivered and accepted by Stull, who in turn delivered it to the treasurer, was quite a safe method of procedure. So far as this record discloses Stull may have requested that it be done this way, and it falls far short of establishing agency.

It is also contended by appellants that the corrected record of July 8, 1937, establishes the agency. We have no doubt of the Board's power to correct its record so that it will speak the truth, but it cannot be done to the disparagement of rights of innocent third parties which have previously intervened. McQuillin on Municipal Corporations (2d Ed) Vol. 2, sec.

659; Simon Ryder's Estate v. City of Alton, 175 Ill. 94, 51 N.E. 821; State ex rel. Owen v. Schotten, 165 Wis. 88, 160 N.W. 1066, 3 A.L.R. 1306. Here the correction was not made until practically one year after appellee had purchased and paid for the warrants, and six months after this suit was filed. It was not pleaded until about one year and five months after it was made. The minutes of the Board were taken in shorthand by the secretary. She transcribed them and prepared the transcript, and both the record and transcript showed Stull to be the buyer. The record does not show any admission from her that there was a mistake either in her writing or transcription. Stenography being a system of writing based primarily on phonetics, it is difficult to understand how the character for "buy" could be confused with the one for "sell." Yet this was the only correction that was made and she was directed by the Board to make it. Under the circumstances there was no error in holding that the correction could not bind appellee, and that so far as it was concerned the transaction was a sale of the warrants to Stull. House v. Beak, 141 Ill. 290, 30 N.E. 1065, 33 Am.St.Rep. 307; Bay City v. Lumbermen's State Bank, 193 Mich. 533, 160 N.W. 425.

Appellants further contend that, even though the transaction be considered a sale to Stull, the warrants are invalid for lack of consideration to the Board, and the issue, sale and delivery was ultra vires. That the warrants were authorized, issued and disposed of in compliance with the law, and that good title for the entire issue passed to appellee for a valid consideration, we think there can be no doubt. See Sherlock v. Village of Winnetka, 68 Ill. 530; National Life Insurance Co. v. Board of Education, 8 Cir., 62 F. 778.

Appellants insist that all defenses available to the Board against the warrants in the hands of Stull were likewise available against appellee. The facts in the cases cited in support of this contention are not analogous to those here, and the cases relied on are not applicable.

It is further contended by appellants that the Board had no power to dispose of its tax anticipation warrants for less than par. This does not seem to be the law under the Illinois Statute, although the statute cited has not been directly construed with respect to this question by the higher courts of that state. Appellants rely upon

certain decisions of other state courts in support of this contention, and ask us to adopt these rulings as the law of Illinois. This we decline to do, because we think the language of the Illinois Statute, and the decisions of her courts with respect to analogous questions, do not warrant it.

It is unnecessary to consider the legal questions presented with respect to agency, because we think no agency existed.

Decree affirmed.