(65 Misc. Rep. 92.)

O'BRIEN v. CITY OF NIAGARA FALLS.

(Supreme Court, Trial Term, Niagara County. September, 1909.)

1. MUNICIPAL CORPORATIONS (§ 60*) — POWER OF COUNCIL — EMPLOYING STENOGRAPHER FOR INVESTIGATION.

The power of a common council under a city charter to investigate the management of a city office implies the power to employ, in accordance with the city charter, a stenographer to report the same.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 151, 152; Dec. Dig. § 60.*]

2. MUNICIPAL CORPORATIONS (§ 248*)—CONTRACTS—COMMON COUNCIL—RATIFYING EMPLOYMENT BY COMMITTEE.

The action of a city council in auditing and allowing the claim for services of a stenographer employed by an investigating committee appointed by it is a ratification of the employment, having the same force as an original employment by it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 686; Dec. Dig. § 248.*]

3. MUNICIPAL CORPORATIONS (§ 236*)—CONTRACTS FOR WORK—NECESSITY FOR ADVERTISING.

The provision of a city charter that it shall be the duty of the city council, and of all boards, departments, and officers of the city, after public notice, to let to the lowest bidder contracts for any work or material, in excess of $50, for any such board, department, or officer, unless the board of estimate and apportionment unanimously determine it to be impracticable to procure the work or material by contract so let, does not apply to the professional and technical services of a court stenographer, so as to prevent the city council obtaining such services without competitive bids or the approval of the board of estimate and apportionment, for the purpose of conducting, pursuant to its power under the charter, an occasional investigation of the management of city offices.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 669; Dec. Dig. § 236.*]

Case submitted on an agreed statement of facts by J. William O'Brien against the City of Niagara Falls. Judgment for plaintiff.

Ackerson & Chapin, for plaintiff.
Franklin J. Mackenna, Corp. Counsel, for defendant.

POUND, J.  The common council of the city of Niagara Falls has the power to investigate the management of all city offices and departments (City Charter, § 136), and such investigation may be conducted through the medium of a committee, which is empowered to issue subpœnas and compel the attendance of witnesses (City Charter, §§ 136, 141).  In the exercise of this power, the common council, at a regular meeting held on the 7th day of October, 1907, adopted a resolution authorizing the president of the common council to appoint a committee to investigate "the cause or causes of friction" alleged to exist between the police department of the city and the police justice.  This resolution became effective without the approval or disapproval of the mayor.  Thereafter such committee was appointed, conducted the investigation, and made its report to the common council.

Plaintiff was employed by said committee, acting without any specific authorization by the common council and without calling for competitive bids, as stenographer to report its proceedings and to transcribe copies of his minutes for its use, and he rendered services as such to the committee, by virtue of said employment, of the admitted value of $516.68.  His claim therefor, duly verified, was regularly audited, allowed, and ordered paid by the resolution of the common council.  The mayor, by virtue of the authority vested in him by the city charter, disapproved said resolution; but the common council, on reconsideration thereof, passed the resolution by a two-thirds vote, so that the same, if a legal exercise of the powers of the council, took effect as if approved by the mayor (City Charter, § 138).

The city charter of Niagara Falls provides as follows:

"Sec. 180. Board of Estimate and Apportionment.—There shall be a board of estimate and apportionment which shall consist of the mayor, president of the common council and city treasurer."

"Sec. 192. It shall be the duty of the common council and all boards, departments and officers of the city, after public notice to let to the lowest bidder, who has given adequate security, contracts for the performance of any work or for the supplying of any materials for each of said boards, departments or officers respectively except school and library books and school apparatus, in all cases where the work and materials cost to exceed fifty dollars, unless by unanimous approval of the board of estimate and apportionment it is determined to be impracticable to procure the work or materials by contract so let."

It is stipulated:

"That the board of estimate and apportionment never authorized or approved of the employment of the plaintiff by said committee of the common council, and that said board of estimate and apportionment never authorized or approved of the resolution of the common council auditing and authorizing and directing the payment of said claim of the plaintiff, and never authorized or approved any appropriation of the funds of the city therefor."

For the reason that the foregoing provisions of the charter had not been complied with, the mayor and city clerk refused to draw and sign a warrant on the city treasurer for the payment of plaintiff's claim, and so he brings his action to recover the amount thereof.

That the power of the common council to conduct an investigation implies the power to employ, in accordance with the city charter, a stenographer to report the same, if funds are available therefor, needs but little citation of authority. Thus, under a power "to establish markets," it was held that the council might employ an architect to prepare plans for a market building. Peterson v. Mayor, 17 N. Y. 449. That the action of the common council in auditing and allowing the claim of the stenographer employed by the committee was a ratification of such employment, having the same force as an original employment by the council, is also clear. People v. Flagg, 17 N. Y. 584; Peterson v. Mayor, supra. That the services of a stenographer in reporting evidence call for technical and professional knowledge and skill, not of a character ordinarily to be obtained to the best advantage by competitive bids, cannot be seriously questioned. It has been so held as to architects and engineers, physicians, lawyers, and artists. Harlem Gaslight Co. v. Mayor, 33 N. Y. 309.

But if the common council possessed no authority to incur a debt of this kind without the approval of the board of estimate and apportionment, its ratification of the employment of plaintiff imposed no liability upon the city, and was a nullity. Halstead v. Mayor, 3 N. Y. 430. If the city charter had provided unqualifiedly that no work should be performed by the city, except on contract let by competitive bidding, the statute would not apply to occasional services of a court stenographer; for the reason that such a construction of the statute would be deemed unreasonable and mischievous. The courts have many times held that the word "work," in such connection, is used in a restrictive sense, as applicable only to work which safely may be awarded to the lowest bidder, as otherwise irreparable mischief might result. People v. Flagg, supra. Gleason v. Dalton, 28 App. Div. 555, 51 N. Y. Supp. 337.

It is contended that no such construction ex necessitate rei is demanded here; that the literal alternatives are not, as in the cases previously cited, on the one hand, no employment, or, on the other, an unreasonable and mischievous application of the rule of competition, but, rather, that they are employment, on the one hand, by competition, or, on the other, without competition, but with "unanimous approval of the board of estimate and apportionment." This theory of construction does not appeal to me as sound. Read in the light of the authorities above cited, the true construction of the legislative intention so expressed in section 192 of the charter, above quoted, seems to be that the rule requiring competitive bids may, in those classes of contracts where competition is usual and proper, be suspended by unanimous vote of the board of estimate and apportionment in exceptional cases, as, for example, when the amount involved is small, although in excess of $50, or where the emergency is pressing, or where calling for bids would result in no advantage. But there is another entirely separate and distinct class of cases, including professional services, where, from the nature of the work required, calling for bids would avail nothing, and where it is the general and better prac-

tice not to attempt to let contracts by competition. With these cases section 192 does not attempt to deal.

The evil here guarded against is not the injudicious ordering of investigations by the common council. That is guarded against by the veto power of the mayor in the first instance (Charter, § 138). The statute seeks merely to guard against favoritism in awarding contracts without obtaining bids, where bids are practicable. The powers of the board are discretionary, and, as there is no room for the exercise of discretion in cases like this, it would be derogatory to the dignity of the board to require it to affix a mere rubber-stamp approval to such employments. On the other hand, it might delay and obstruct the common council, and prevent the adequate and convenient exercise of its legitimate functions, if the board, under the guise of disapproving the method of employment, should seek to prevent the employment or the investigation entirely. The common council is answerable only to the electorate for the unwise exercise of inquisitorial powers, regularly instituted.

It does not appear, and I do not understand, that the contingent fund of the common council is not available to pay plaintiff's claim. That is a sufficient appropriation therefor, under the charter. "Where there is a bona fide performance of a contract, of which the city has had the benefit, there is a strong equity in favor of the contractor seeking his pay." Allen, J., in Moore v. Mayor, 73 N. Y. at page 248, 29 Am. Rep. 134.

I think that the professional and technical services of a court stenographer may be obtained by the common council for the purposes of conducting an occasional investigation, pursuant to the provisions of the charter, without calling for competitive bids or obtaining the approval of the board of estimate and apportionment. It by no means follows that the common council has power regularly to employ stenographers for its standing committees.

Services were rendered by plaintiff in good faith, and defendant has had the advantage thereof. Plaintiff is entitled to judgment.