In the Matter of the CITY OF NEW YORK, Appellant, *v.* ABRAHAM D. BEAME, as Comptroller of the City of New York, Respondent, and MCKINSEY & COMPANY, INC., Respondent.

First Department, June 24, 1971.

*Alfred Weinstein* of counsel (*Norman Redlich* and *Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant.

*W. Bernard Richland* for Abraham D. Beame, respondent.

*Per Curiam.* Section 343 of the New York City Charter says, in effect, that if a contract for work, labor, supplies, materials or equipment involves more than the sum of $2,500, it must be

founded on a sealed bid public letting, '' except that *in a special case* the board of estimate by a two-thirds vote may order otherwise ''.

At issue here is a management consulting contract for $250,000, awarded by the Mayor without competitive bidding and without Board of Estimate approval. The Comptroller has refused to register it as a valid contract or to certify it against the appropriation, pursuant to the Administrative Code (§ 93c–3.0). Special Term has upheld the Comptroller. We agree, but for additional reasons.

Special Term found that the work was irregularly done pursuant to a '' letter of intent '' dated March 4, 1969, calling for a fee of $100,000, but that the Assistant Director of the Budget did not issue a certificate of approval — in the sum of $250,000, or 150% beyond the letter of intent — until June 23, 1970, or long after the work was completed; that procedures and designated forms were not followed, and the Comptroller, not being a '' rubber stamp '', did not have to blindly register an illegal contract.

We go further. We find that the Charter, having been adopted by popular vote, should be interpreted by '' the meaning which the words would convey to an intelligent, careful voter ''. (*Matter of Kuhn* v. *Curran*, 294 N. Y. 207, 217.) And the purpose of the Charter is both ancient and obvious, to prevent the giving of contracts to executive favorites; they, by assuming the work, then make the obligation binding on the city. And the Charter explicitly mandates that contracts, in a generic sense, involving more than $2,500, are to be public, '' except in a special case ''. In the latter situation, the Board of Estimate must approve. Arcane case law is not helpful, or needed, when the statute's purpose is so unmistakable.

The cases relied upon by the petitioner-appellant, City of New York, adopted by the dissent, are entirely distinguishable. Not a single one of these arose out of or discussed subdivision a of section 343 of the Charter or any provision of a referendum — adopted Charter, or any provision of law substantially similar to subdivision a of section 343. In *People ex rel. Smith* v. *Flagg* (17 N. Y. 584, 592), decided in 1858: '' The Court *reserved* its opinion upon the question whether the services of the relator [a surveyor] were of such a character as to come within the statute requiring advertisement and. contract with the lowest bidder, putting the judgment upon the other grounds stated '' (emphasis and bracketed words supplied); and significantly the statute there involved had no provision authorizing the designating of particular work contracts as a '' special case '', such

as is provided in subdivision a of section 343 of the Charter. *O'Brien* v. *City of Niagara Falls* (65 Misc. 92, 95–96 [Sup. Ct., Niagara Trial Term]) decided in 1909, involved the appointment of a stenographer to a councilmanic investigation, in regard to which, it was obvious that the independence of the council was involved (see *Barry* v. *City of New York,* 175 Misc. 712, affd. 261 App. Div. 957 [1st Dept., 1941]) and the court merely held that under the statute there involved such employment did not need the unanimous approval of the Niagara Board of Estimate and Apportionment. To the extent that dicta suggested that the approval of a body vested by statute with power to authorize noncompetitive technical work contracts is not necessary to the validity of such contracts, it is in direct conflict with *Wooley* v. *City of Schenectady* (226 App. Div. 383, 385–386 [3d Dept., 1929]). In *Potts* v. *City of Utica* (86 F. 2d 616, 618), the contract there involved was unanimously approved by the appropriate bodies, which, pursuant to statute had authority to exempt contracts which it found inappropriate to submit to public bidding. All that the court held was that those provisions of the statute requiring public bidding were, in the circumstances, rendered inapplicable.

The recent Fourth Department case, *Hurd* v. *Erie County* (34 A D 2d 289, 292), as the opinion there shows, involved a statute (General Municipal Law, § 103) which provided: '' that *all* contracts for public work involving an expenditure of more than twenty-five hundred dollars * * * shall be awarded * * * to the lowest responsible bidder * * * after advertisement for sealed bids ''. (Italics supplied.) It contained no provision such as is contained in subdivision a of section 343 of the Charter vesting in a municipal body the power to authorize noncompetitive technical service contracts. Significantly, in *Hurd* the court noted (pp. 293–294): '' There is no serious dispute that the pool from which these professionals can be drawn is quite small, since there are so few ventures of this magnitude * * * which can serve as a training grounds for the required expertise ''—an obvious contrast to the present situation, for there are, as is admitted in the brief of appellant, literally scores of management consultant firms operating in this city. (See Directory of Consultant Members, 1970, 8th ed. Amer. Mgt. Assn.) And there is respectable authority that activities which are under appeal are not to be regarded as '' professional services ''. (*Matter of Booz* v. *Bragalini,* 2 A D 2d 639; *Matter of Backman* v. *Bates,* 279 App. Div. 1115; *People ex rel. Moffett* v. *Bates,* 276 App. Div. 38, 41–42, affd. 301 N. Y. 597.)

The so-called " judicially engrafted exception ", on which the city relies, can have no application here where the pertinent statute required to be construed was adopted pursuant to a public referendum requiring its interpretation in the popular sense and not in some special and distorted, esoteric manner to which no awareness may be expected of the average intelligent voter. (*Matter of Kuhn* v. *Curran*, 294 N. Y. 207, *supra*; see, also, *Gerzof* v. *Sweeney*, 22 N Y 2d 297, 304.) The cases relied upon by the appellant are inapplicable in that they simply dealt with competitive bidding statutes containing no " special case " provision and where it was held, although a strict reading of the pertinent statute would preclude the municipality from contracting for work for which competitive bidding was impossible, the courts would read into a statute an exception for such contracts. This is not the situation here presented, for subdivision a of section 343 of the Charter is specially designed to take care of any " special case " in which competition is not an acceptable method of obtaining work by empowering the Board of Estimate to determine that a particular kind of work constitutes a " special case ". Past practice and treatment of the Charter is not determinative; and it is apparent the present practice of "letter of intent " has now assumed gargantuan proportions, requiring judicial scrutiny.

In our view, the dissent, in stating that the respondent Comptroller " does not particularly urge that this contract for professional services required competitive bidding but rather that, being an exception to that requirement, was a ' special case ' requiring approval by the Board of Estimate ", misreads both the Comptroller's challenge and the pertinent statute. The " special case " requiring approval by a two-thirds vote of the Board of Estimate cannot be severed from and has direct applicability to those situations where the " work or labor to be done " exceeds a cost of $2,500, in which case competitive bidding is required, *unless* the Board of Estimate makes an exception.

Thus, we cannot say the Comptroller was arbitrary in finding noncompliance with the Charter and the Administrative Code. Indeed, ordinary prudence and basic public policy support his decision, although this matter has now acquired an academic aura. Recent legislation, as envisaged by Special Term, renders a recurrence unlikely, and we learned on oral argument that in any event, the respondent, McKinsey & Co., Inc., will be treated fairly by the city. Thus, we affirm, without costs and without disbursements.

MACKEN, J. (dissenting). In accordance with a so-called letter of intent signed by the Administrator of the Housing and Devel-

opment Administration and approved by the Deputy Director of the Bureau of the Budget authorizing it to proceed, McKinsey undertook to perform consulting services in March of 1969. The letter stated: '' You should understand of course, that any payment to McKinsey & Company for effort expended prior to the completion of a formal contract for services can only be compensated if and when such a contract is actually entered into and approved pursuant to City laws and regulations.'' Although the work was completed in April 1970, a formal contract dated as of March 10, 1969 was not executed by the city until September 2, 1970. Thereafter, the contract was presented to the Comptroller, respondent Beame, for indorsement pursuant to section 93c–3.0 of the Administrative Code which provides in part: '' a. Any contract   *   *   * shall not be binding or of any force, unless the comptroller shall indorse thereon his certificate that there remains unexpended and unapplied a balance of the appropriation or fund applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same.   *   *   *

'' c. It shall be the duty of the comptroller to make such indorsement upon every contract so presented to him, if there remains unapplied and unexpended the amount so specified by the officer making the contract, and thereafter to hold and retain such sum to pay the expense incurred until such contract shall be fully performed. Such indorsement shall be sufficient evidence of such appropriation or fund in any action.'' The respondent refused to indorse the contract for the then stated reason that, having been awarded without competitive bidding, approval by the Board of Estimate pursuant to section 343 of the City Charter was required and not obtained. This article 78 proceeding to compel the indorsement and for other relief ensued.

Respondent's answer in addition to alleging noncompliance with section 343, stated as a defense: '' The work required to be performed pursuant to the said purported contract was actually completed long before any such purported contract was executed by the parties, in the total absence of any contract ''. Special Term held that the contract, '' involving personal skills and training and professional service '', was not subject to the provisions of section 343 but after indicating several alleged incidents of noncompliance with executive directives in arriving at the contract, dismissed the petition on the ground that under the provisions of the Administrative Code heretofore quoted, the Comptroller was not permitted to register a contract which had been fully performed before its execution and tender to him.

Section 343 of the Charter provides in part: " a. If the several parts of the work or labor to be done and/or the supplies, materials and equipment to be furnished shall together involve the expenditure of more than two thousand five hundred dollars, such work or labor or supplies, materials and equipment shall be obtained only by contract on public letting founded on sealed bids under such regulations as shall be made by the board of estimate except that in a special case the board of estimate by a two-thirds vote may order otherwise." The respondent does not particularly urge that this contract for professional services required competitive bidding but rather that, being an exception to that requirement, was a " special case " requiring approval by the Board of Estimate. In our opinion Special Term correctly held that section 343 does not apply to this contract and since, as a matter of law, the contract did not require competitive bidding, permission of the Board of Estimate to dispense with it was not required. (*People ex rel. Smith* v. *Flagg,* 17 N. Y. 584; *O'Brien* v. *City of Niagara Falls,* 65 Misc. 92; *Potts* v. *City of Utica,* 86 F. 2d 616, 618; *Hurd* v. *Erie County,* 34 A D 2d 289.)

In arriving at this conclusion, we, as was Special Term, are impressed by the evidence that between 1964 and 1966 after the adoption of the present charter and while the respondent was Comptroller under a previous administration, well over 200 contracts for professional services totaling over twenty million dollars made without competitive bidding or approval of the Board of Estimate were registered by his office, a practice apparently continuously followed until the rejection of the present contract. " When the meaning of a statute is doubtful, a practical construction by those for whom the law was enacted, or by public officers whose duty it was to enforce it, acquiesced in by all for a long period of time  *  *  *  ' is entitled to great if not controlling influence ' ". (*City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543, 549; *2525 East Ave.* v. *Town of Brighton,* 33 Misc 2d 1029, 1033, affd. 17 A D 2d 908).

We think, however, that Special Term erred by in effect holding the contract invalid. The court is concerned only with the legality of the procedures here followed — not at all with their prudence. Unless forbidden by legislative enactment, the fact that the contract was executed after the work had been completed does not invalidate it. (General Obligations Law, § 5–1105; 9 N. Y. Jur., Contracts, § 105; 1 Williston, Contracts [3d ed.], § 146, p. 633; N. Y. Law of Contracts, § 508.) Respondent asserts that such proscription is found in the language of subdivision (c) of section 93c–3.0: " and *thereafter* to hold and retain such

sum to pay the expense incurred until such contract shall be fully performed '' (emphasis supplied). Special Term agreed, saying:

'' A contract  *  *  *  made months after full performance and in respect of an earlier letter of intent having no binding effect  *  *  *  is not a contract as to which allocated funds are to be ' thereafter ' held — that is, after registration and indorsement. The Comptroller in these circumstances is asked to perform after the event, and such tender for registration is not permitted or covered by the language of the code section. *  *  *  the contract was tendered for registration beyond the time prescribed by the language of the statute, and in which the Comptroller's duty could be invoked.''

We are unable to draw any such conclusion from the code language relied on. Its obvious and sole purpose was to require that having certified the existence of appropriated funds sufficient to meet the expense of the contract, the Comptroller retain the funds until called upon to disburse them for that purpose — not to alter established contract law. Failures, if any, to comply with internal administrative directives were waived or ratified by the execution of the contract and consent thereto by authorized administrative officers, nor did Special Term base its decision on such. We conclude that the contract was valid and no claim is made that there were not sufficient appropriated unexpended and unapplied funds to pay its expense.

The judgment and order appealed from should be modified to direct respondent to indorse and file the contract and otherwise affirmed.

CAPOZZOLI, McGIVERN and TILZER, JJ., concur in *Per Curiam* opinion; MACKEN, J., dissents in an opinion in which STEVENS, P. J., concurs.

Order and judgment (one paper), Supreme Court, New York County, entered on January 7, 1971, affirmed, without costs and without disbursements.