OPINION OF THE COURT
Martin B. Stecher, J.
The plaintiffs are the President of the Council and the Presidents of each of the five Boroughs of the City of New York. The defendant is the Mayor of the City of New York. *973 Together with the Comptroller, these parties constitute the city’s Board of Estimate.
The plaintiffs move to enjoin the Mayor preliminarily from voting as a member of the Board of Estimate, on proposals to override certain mayoral budgetary modifications (NY City Charter, § 124, subd b). (All subsequent references, except where otherwise indicated, are to the charter.) The defendant, having answered the complaint, cross-moves for summary judgment (CPLR 3212, subd [a]).
The dispute revolves around the application of subdivision d of section 120 which provides that "[t]he Mayor shall not participate in any action or vote of the board of estimate on the budget.” The plaintiffs contend that the foregoing language applies to all budgetary matters which may come before the Board of Estimate. The Mayor contends that it applies only to the subject matter of section 120 entitled "The budget; approval” and to those other sections of the charter which incorporate section 120 by reference.
Helpful to an understanding of the controversy is an examination of the budgetary procedures mandated by the charter.
Each year the Mayor’s director of management and budget is required to prepare an executive budget (§ 111, subd b). A budget must be submitted by the Mayor to the Board of Estimate and the City Council on dates fixed by the charter (§ 116). Thereafter, public hearings on the budget "as presented by the mayor” are mandated to be held by both the Board of Estimate and the council (§ 119).
Section 120 then deals with legislative action on the budget. "The board of estimate and the council may increase, decrease, add or omit any unit of appropriation in the budget as submitted by the mayor, or add, omit or change any terms or conditions of it.” (§ 120, subd a.) Not later than June 1, the Board of Estimate and the council, by separate concurrent vote of each body "shall adopt a single budget” which is to be returned to the Mayor by June 1 (§ 120, subd b). The charter goes on to provide that "[t]he mayor shall not participate in any action or vote of the board of estimate on the budget” (§ 120, subd d).
Not later than June 10, the Mayor "may disapprove any increase or addition to the budget, any unit of appropriation, or any change in any term or condition of the budget” submitted to him by the council and the Board of Estimate (§ 121, subd a, "Veto of the mayor”); whereupon "[e]ither the *974 board of estimate by a two-thirds vote of all the members of the board other than the mayor, or the council, by a two-thirds vote of all the council members, may override any disapproval by the mayor pursuant to subdivision a of this section, with the concurrence of the other body by a majority of all members other than the mayor in the case of the board of estimate.” (§ 121, subd b; emphasis supplied.) On the certification by the Mayor, the Comptroller and the City Clerk the adoption of the expense budget is complete. (§ 122.) It is clear, and the parties do not dispute, that the Mayor may not act as a member of the Board of Estimate while in the process of adopting the expense budget. A similar system of procedures is set forth with respect to the adoption of the capital budget, dispensing with mayoral participation in the acts of the Board of Estimate during that process as well. (§ 210 et seq.)
The budget as adopted, however, is subject to modification during the fiscal year and it is the modifying procedure which gives rise to the dispute. During any fiscal year, the Mayor may transfer "part or all of any unit of appropriation[1] to another unit of appropriation, except than when any such transfer (1) shall be from one agency to another or (2) shall result in any unit of appropriation having been increased or decreased by more than five precent from the budget as adopted for such unit of appropriation, the mayor shall notify the board of estimate and the council of the proposed action. Within thirty days after the first stated meeting of each body following the receipt of such notice, either the board of estimate or the council may disapprove the proposed action.” (§ 124, subd b; emphasis supplied.) If subdivision d of section 120 is applicable, such budget modifications may be blocked by five Board of Estimate votes. If subdivision d of section 120 is not applicable it will take six Board of Estimate votes to block modification.[2]
*975 Subdivision f of section 124 provides that "[t]he procedures and required approvals pursuant to sections one hundred twenty, one hundred twenty-one and one hundred twenty-two * * * shall be followed in the case of (1) any proposed amendment to the budget respecting the creation of new units of appropriation, or (2) the appropriation of new revenues from any source, or (3) the proposed use by the city of previously unappropriated funds received from any source.”
The Mayor argues that under principles of ejusdem generis,[3] when construing budget modification, the procedures of section 120 which limit his right to vote, apply only in the three instances set forth in subdivision f quoted above: the creation of new units of appropriation, appropriation of new revenues or use of unappropriated funds. The plaintiffs contend that irrespective of the position of subdivision d of section 120 in the charter, its language is so all-inclusive as to leave no doubt of its meaning or the generality of its application.
The charter under which the city presently operates was proposed by a State Charter Revision Commission for New York City, created pursuant to an act of the Legislature. The commission’s proposals were adopted by the voters of the City of New York at a general election on November 4, 1975. The plaintiffs in support of their interpretation of the charter have submitted affidavits, affirmations and correspondence from commissioners and staff people, a partially audible tape recording of a meeting of the commissioners; and what purports to be a transcript of that tape prepared by people who allegedly used "highly sophisticated” listening equipment.
To the extent that these various documents constitute recently created memoirs of the commissioners and staff of events of years ago, I decline to consider them. It is true where legislation must be interpreted a court may look to committee hearings and reports for guidance as to the intent of the adopting body on the theory that members of the Legislature had them available for guidance at the time they voted. Similarly, recourse is often had to the executive’s bill *976 jacket to determine what considerations were before him when he signed the legislation into law. I know of no case where courts have had recourse to the written recollection of committee members which were expressly prepared for litigation long after the adoption of the statute.
Furthermore, the construction of constitutions and charters adopted by popular vote may not proceed in the same fashion as the construction of statutes. The Court of Appeals has said that: "We may not * * * construe the words of the Constitution in exactly the same manner as we would construe the words of a will or contract drafted by careful lawyers, or even a statute enacted by the Legislature. It is the approval of the People of the State which gives force to a provision of the Constitution drafted by the convention, and in construing the Constitution we seek the meaning which the words would convey to an intelligent, careful voter.” (Matter of Kuhn v Curran, 294 NY 207, 217; to the same effect Matter of City of New York v Beame, 37 AD2d 89.)
Obviously, current memories of past events or even tape recordings of a meeting to which the voters were not privy are not helpful. What we are construing is not what the commissioners intended but what they communicated to the people who ultimately adopted this language. For this purpose we may, if necessary, have recourse to the documents made available to the voters,[4] such as its Preliminary Recommendations of the Charter Revision Commission, The "Final Report” of the Charter Revision Commission and the abstract of the various propositions placed before the voters by the board of elections on and before election day.
I must conclude, however, that resort to canons of construction including doctrines such as ejusdem generis and espressio unius est exclusio alterius is unnecessary in this case. (Bender v Jamaica Hosp., 40 NY2d 560, 561-562.) The language barring the Mayor’s participation is clear and unequivocal: he "shall not participate in any action or vote of the board of estimate on the budget” (§ 120, subd d; emphasis supplied). The use of words such as "all” "every” or "any” convey an intention to allow no modification or limitation (Shilbury v Board of Supervisors of County of Sullivan, 54 Misc 2d 979). The explanatory documents read as a whole, *977 available to the voters prior to election day, provide no reason to believe that the voters were led, by those documents, to a contrary conclusion.[5] Nor does the fact that there are other specific exclusions (cf. § 121, subd b) limit the generality of this exclusion.
I am of the opinion that the intelligent, careful voter, examining the charter and explanatory data made available to him, would be led to the reasonable belief that the charter excluded the Mayor’s participation from any Board of Estimate vote on the budget. The fact that the exclusion is placed in the portion of the statute entitled "The budget; approval” is not controlling (cf. Rivers v Sauter, 26 NY2d 260, 262; Squadrito v Griebsch, 1 NY2d 471) for the words of subdivision d of section 120 extend beyond the approval process. Nor do the other express provisions of limitation (see, e.g., § 121, subd b) lead to the necessary conclusion that the words of limitation contained in subdivision d of section 120 apply only to the adoption of the budget. If interpretation were necessary we would be required to examine the scheme of the charter as a whole, and "it is not material in what order provisions * * * are placed” (People ex rel. Mason v McClave, 99 NY 83, 89). *978 The charter as a whole reveals an intent to exclude the Mayor from voting as a legislator to sustain or override his proposals as chief executive.
The defendant has moved for summary judgment. If another party is entitled to such judgment it may be granted without the necessity of a cross motion (CPLR 3212, subd [b]). Here, there are no issues of fact; only issues of law. Summary judgment is appropriate and shall be entered in favor of the plaintiffs declaring that the Mayor of the City of New York may not, as a member of the Board of Estimate, cast any vote during consideration of budget modifications under the provisions of subdivision b of section 124 of the Charter of the City of New York.
Enforcement of the judgment shall be stayed for 30 days after service with notice of entry to enable the Mayor to seek a further stay in an appellate court.

. Units of appropriation are sums appropriated to each city agency "for personal services” and “for other than personal services” separately stated (§ 112).

. The Mayor, the Comptroller and President of the Council each has two votes on the Board of Estimate and the Borough Presidents have one vote each, making 11 votes in all (§ 62, subd a). "Except as otherwise provided in this charter or by law, the board shall act by resolution adopted by a majority of the whole number of votes authorized to be cast by all the members of the board” (§ 62, subd b; emphasis supplied). If the Mayor is authorized to cast his vote, a total of 11 votes are authorized and six affirmative votes are the minimum necessary to pass any resolution. If the Mayor is not authorized to vote only nine authorized votes exist in which event five affirmative votes are required to approve any resolution.

. Where general words are followed by words of a particular and specific meaning, "the general words are not construed in their widest extent but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned” (Black’s Law Dictionary, 3d ed). The Mayor also relies on the parallel rule expreasio unius est exclusio alterius: the express mention of one thing implies the exclusion of another (Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205, 208).

. That any substantial number of voters read these documents is one of the more charming fictions (cf. Gray, Nature and Sources of the law [2d ed], p 30 et seq.) indulged in by the law.

. The Preliminary Recommendations of the Commission, at page 5, majority recommendation No. 4, states: "Mayor Not to Participate in Board of Estimate Action on the Budget: The Charter allows the Mayor to participate in initial Board of Estimate adoption of the budget but not in action to override a veto. If the Board is to function as an independent budget-making body, it would be appropriate for the Mayor to suspend any formal participation during budget adoption. The Mayor would still be available to confer with other Board members, but would not formally vote on the budget.” The Final Report, at page 7, under "Proposition 1: Fiscal Reforms”, states: "5. The mayor shall not vote on the adoption of his executive expense budget by the Board of Estimate. This will eliminate the present conflict in his role as proposer and disposer on budgetting matters.” (Emphasis in original.) On page 5, the Final Report continues: "8. A veto by the Mayor may be overriden by a two-thirds vote of either the Board of Estimate or Council with the concurrence of the majority of the other body. Currently, a two-thirds vote of each body is required to override a veto. This reform strengthens the Council and Board of Estimate relative to the Mayor in budget matters.” (Emphasis in original.) The Report continues at page 7: "10. The council and Board of Estimate may review and disapprove transfers of funds from one program (unit of appropriation) to another, limiting the Mayor’s ability to rearrange the budget after adoption.” (Emphasis in original.) Under Capital Budget the Final Report states: "3. The Mayor shall no longer vote on the adoption of his executive capital budget. Same reason as expense budget, item 5.” (Emphasis in original.) "6. A veto by the Mayor may be overridden by two-thirds vote of either the Board of Estimate or the Council with the concurrence of the majority of the other body. Same reason as expense budget, item 8.” (Emphasis in original.) The Board of Elections abstract merely said: "Mayor not to participate in actions or votes of the Board of Estimate on budget.”