OPINION OF THE COURT
Martin B. Stecher, J.
This is an application by the plaintiffs, rent stabilized *103 tenants and various associations of tenants, for an order enjoining, pendente lite, the issuance and enforcement of "any surcharge order or other addition to any rent guidelines order, and collecting any surcharge or other increase pursuant to Rent Guidelines Order Nos. 10A and 10B;” and to enjoin the defendants from "issuing and enforcing Rent Guidelines Order Nos. 10A and 10B and collecting any rental pursuant to said orders retroactively or prospectively.”
A cross motion is made by defendants New York City Conciliation and Appeals Board and its chairman to dismiss the complaint as to them.
Pursuant to my decision dated September 25, 1978, and the order issued thereon dated October 31, 1978, the Rent Guidelines Board of the City of New York (Board) was, by reason of its failure to abide by the open meetings law (Public Officers Law, art 7) and for other procedural reasons, directed to consider its Rent Guidelines Order No. 10 de nova. The challenged orders are Rent Guidelines Order No. 10A which is the order promulgated on April 4, 1979 in lieu of Rent Guidelines Order No. 10; and Rent Guidelines Order No. 10B which is in the nature of a fuel surcharge and which was adopted by the Board as a separate resolution on April 10, 1979, retroactive to March 1, 1979. The attack is made upon the following grounds:
(1) That the meetings at which the guidelines were adopted were procedurally defective in that they did not adhere to the terms of my order of October 31, 1978;
(2) That tenants were given insufficient opportunity to present data relating to Rent Guidelines Order No. 10B, the fuel surcharge;
(3) That the Board itself had insufficient opportunity to familiarize itself with and consider all of the data provided to the Board;
(4) That the provision in Order No. 10A authorizing the reopening of the guidelines for consideration of the fuel surcharge was beyond the power of the Board in that the Administrative Code of the City of New York authorized but one Rent Guidelines Order per annum;
(5) That the Board, in violation of the Administrative Code, failed to file timely an "Explanatory Statement and Findings” concerning Rent Guidelines Order No. 10A and failed com *104 pletely to file such "Explanatory Statement and Findings” as to Rent Guidelines Order No. 10B;
(6) That the Board’s asserted right to reopen the order during a 12-month period is an unconstitutional invasion of the contractual rights of landlords and tenants; and, finally,
(7) That Rent Guidelines Order Nos. 10A and 10B are both improper because the Board considered data relating to costs incurred subsequent to July 1, 1979.
The meetings were not procedurally defective. The meeting itself at which Guideline No. 10A was adopted appears to have been substantially in accord with the terms of my order dated October 31, 1978; and the meeting at which Guideline No. 10B was adopted appears to have been substantially in accord, procedurally, with both the Administrative Code (§ YY51-5.0, subd b) and article 7 of the Public Officers Law. Whether or not tenants were given sufficient opportunity to deal with the data relating to the Rent Guidelines Order No. 10B is a matter which is open to question and cannot, therefore, be a basis for a preliminary injunction. I do not intend by this statement to suggest that as a matter of law any person is entitled to more notice than the statute or prior order calls for.
Much of the attack upon these guidelines is based upon defects and shortcomings alleged to exist in the Board itself and its staff.[1] Such questions can have no bearing on an application for a preliminary injunction nor are they within the purview of judicial review. The court deals with an objective, pragmatic question: Was the determination made in accordance with law and did it have a rational basis (Matter of Colton v Berman, 21 NY2d 322, 329)? These other questions of the Board’s adequacy are not for the courts but for the city legislature and executive.
The attack on the Board for allegedly taking into consideration data of events occurring later than the calendar year *105 1977 is likewise no basis for the issuance of a preliminary injunction. It is true that the statute (Administrative Code, § YY51-5.0, subd b), by requiring the Board to file no later than July 1 of each year "its findings for the preceding calendar year” inferentially suggests that the findings for that year shall constitute a basis for the Board’s holding in the following year beginning July 1. There is nothing, however, in the statute to suggest that only such data may be considered by the Board. Guideline No. 10A was adopted under unusual circumstances resulting from a remand of Guideline No. 10 because of the Board’s procedural defaults. (Rent Stabilization Assn. of N. Y. C. v Rent Guidelines Bd. for City of N. Y., 98 Misc 2d 312.) Consequently, its determination was made long after July 1, 1978. The law does not require administrative agencies any more than it requires courts (cf. Richcar Music Co. v Townes, 67 AD2d 888) to ignore realities which are apparent at the time of adoption of regulations, rules or guidelines. What the Board is engaged in prior to July 1 of each year is prediction of the economic facts of the ensuing three years. If the Board at the time of adoption has available to it further data which will help it refine those predictions, there is no reason in law to deny the Board such opportunity.
The Board in adopting Rent Guidelines No. 10A, that is the guideline for leases entered into during the 12-month period beginning July 1, 1978, expressly adopted a "reopener clause” to permit it to "convene to consider an adjustment for unusual [heating] fuel costs.” On April 10, 1979, six days after the adoption of Guidelines No. 10A, the Board adopted Rent Guidelines No. 10B to allow the landlords a further increase because of the rapid inflation of petroleum prices. A major attack of the plaintiffs is on the Board’s right to issue more than one guideline per annum. The enabling statute (Administrative Code, § YY51-5.0, subd b) provides that "[t]he rent guidelines board shall establish annually guidelines for rent adjustment * * * Not later than July first of each year, the rent guidelines board shall file with the city clerk its findings for the preceding calendar year, and shall accompany such findings with a statement of the maximum rate or rates of rent adjustment, if any * * * authorized for leases or other rental agreements commencing during the next succeeding twelve months.” The question, then, is: Does this requirement that guidelines be established "annually” prohibit the Board from reviewing the circumstances of the residential real estate *106 industry more than once during the course of a year? In my view, it does not.[2]
The purpose of all controls of rents in the City of New York (L 1962, ch 21; Administrative Code, tit Y; and Administrative Code, tit YY) have a twofold purpose: to limit profiteering in a market marked by housing shortage and to conserve and improve the housing stock of the City of New York. In adopting the requirement that the Board review the guidelines annually, the council did not intend to limit the Board but to mandate the Board to review rentals and stabilize housing not less frequently than once each year. In order to achieve its dual purposes, the Board necessarily had the power to deal with near catastrophic changes in the real estate industry. It is folly to suggest that because the Board makes a finding prior to July 1 of any year concerning oil prices of the prior calendar year, that it must ignore any acts of OPEC avarice which may thereafter ensue. Such a course would necessarily endanger the statutory aim to preserve and conserve housing. It was not the intent of the council to tie the hands of the Board but rather to give it the power it required to perform its function. The "re-opening” is not as a matter of law, illegal and entitles the plaintiffs to no preliminary injunction.
An attack is made on Guidelines Order No. 10B in that it purportedly impairs the obligation of contracts (US Const, art I, § 10). By its own terms, however, Guidelines Order No. 10B does not purport to amend any contract (lease) already entered into. It applies to leases thereafter executed; and as to leases previously executed, it applies "only where such lease permits the rental reserved to be adjusted pursuant to subsequent determinations of the Board during the term of such lease.”[3] Myriad questions may arise both generally and on a lease-to-lease basis concerning the implementation of such language; but none of them constitutes a ground for a preliminary injunction.
Finally, we deal with the obligation of the Board to file, *107 together with the periodic statement of rent adjustments, the findings of the Rent Guidelines Board for the previous year. (Administrative Code, § YY51-5.0, subd b.) Guidelines No. 10A (the statement of general increases) was adopted on April 4, 1979 but its findings were not filed until April 26, 1979. Guidelines No. 10B (the oil surcharge guideline) was adopted on April 10, 1979. The affidavit of the Board chairman, dated May 18, 1979; informs us "it is anticipated that the explanatory statement and findings for Order 10B will soon be filed and published.” In view of the willingness of counsel to engage in postsubmission communication with the court and in the absence of further word that such "explanatory statement and findings” have been filed, I must assume that to date none has been filed. The chairman of the Board does not appear to be particularly concerned with the Board’s failure to comply with the requirements of law.
In response to an attack on this failure to provide explanatory data the Board chairman responds, "I am informed by counsel that it is the established law of this state that the acts of public officials are not rendered void by failure to act in complete technical compliance with authorizing legislature.” The failure of this Board to follow mandated procedures has been consistent. First, it sought to act without a quorum, then it sought to act without giving appropriate notice to the public of its meetings and then it acted in secret in violation of article 7 of the Public Officers Law. Now, after remand, it disdains to file, and file timely, the statements upon which both the public, which is affected and the courts, which are required to review the acts of the Board (L 1962, ch 21, § 1, subd 8) may make an informed judgment as to the rationality of the Board’s actions. The city has reposed confidence in the Rent Guidelines Board to administer a law of great complexity and difficulty; and as suggested by the plaintiffs, it is entirely possible that it has provided the Board with insufficient means to accomplish the undertaking. The law, however, is clear: members of the public are entitled to observe every step of the proceedings by which their fate is to be determined (Public Officers Law, art 7; Rent Stabilization Assn. of N. Y. C. v Rent Guidelines Bd. for City of N. Y., 98 Misc 2d 312, supra); and the court which has the obligation of judicial review is absolutely entitled to the findings upon which the Board erects the structure of its rent or fuel supplement guidelines. Just as a court is not entitled to determine issues without stating its *108 reasons (CPLR 4213, subd [b]; Kazansky v Bergman, 4 AD2d 79), so this administrative agency is not entitled to promulgate its order without stating reasons which may be reviewed by the public and the court. The timeliness of such statement is significant if the Board is to avoid the plaintiffs’ charge that it first promulgates guidelines and then seeks justification for them.
The plaintiffs have failed to demonstrate any irreparable injury should this application for an injunction be denied; and, except for the Board’s failure to file its findings and explanatory statement for Order No. 10B, plaintiffs have not demonstrated clearly that they are likely to succeed in this action (see Albini v Solork Assoc., 37 AD2d 835). I cannot, however, ignore the Board’s inaction with respect to Order No. 10B to comply with statutory mandates.
The motion is denied with leave to renew as to Rent Guidelines Order No. 10B when the explanatory statement is filed; and irrespective of the explanatory statement, if it shall not be filed by June 20, 1979.
The cross motion is denied. The complaint seeks to enjoin those moving defendants from enforcing challenged orders and states a cause of action against them for such relief.

. Thus, it is asserted that two new members of the Board had no opportunity to acquaint themselves with the necessary data; that the entire Board had an inadequate opportunity to consider the data presented by staff, tenants and landlords; that the very structure of a part-time board (members are paid $100 per day "for no more than ten days a year” [Administrative Code, § YY51-5.0, subd c]) militates against its ability to perform its statutory function; the difficulties inherent in a staff which is borrowed from other agencies to which staff members owe their primary obligations; the insufficiency of reports from and findings by staff; and the difficulty of enforcing rent stabilization by reason of the fact that leases and rents are not required to be centrally recorded.

. The affidavit of a former member of the city council concerning his intent and the intent of the council in enacting the Rent Stabilization Law is disregarded. Such recollections expressed for the purpose of litigation may not be used to ascertain the intent of a statute (cf. Golden v Koch, 98 Misc 2d 972).

. Whether or not such a clause in a lease is enforceable where prior leases had none, or whether a tenant is obligated to accept a renewal lease containing such a clause where none previously existed is not now before the court.